# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SENECA SPECIALTY INSURANCE CO.,

        Plaintiff,

v.

CIVIL CASE NO. 07-14789
HON. MARIANNE O. BATTANI

UNIVERSAL COIN LAUNDRY MACHINE,
LLC, STEPHEN BEAN, FREDERIC M. BEAN,
TIMOTHY E. WAUN and DEANNA WAUN,

        Defendants.

_____/

## OPINION AND ORDER

**I.    INTRODUCTION**

Before the Court are Plaintiff Seneca Specialty Insurance's Motion for Summary Judgment (Doc. #20) and Defendants Timothy and Deanna Waun's (the "Waun Defendants") Motion for Summary Judgment (Doc. #25). Plaintiff, an insurance company, is seeking a declaratory judgment that their policy with Defendants Universal Coin Laundry Machine, and its co-owners and sole employees, Stephen Bean and Frederic M. Bean (together, the "Universal Defendants") does not apply to the claim by the Waun Defendants against the Universal Defendants for negligence in providing professional services. Both parties have moved for summary judgment on the question of whether the policy covers the claim.

## II. STATEMENT OF FACTS

The Universal Defendants are in the business of selling coin-operated laundry machinery. In order to generate sales, they conduct seminars on the coin-operated laundry business. These seminars include pro forma income projections to demonstrate the profitability of the business. The Universal Defendants offer consulting services to parties interested in setting up a coin-operated laundry, including site selection, finding financing, real estate services, and marketing plans. (See Coin and Debit Card Laundry Development Agreement, Pl. Exh. 2) The price for these consulting services is $200 an hour, but this fee is waived if the customer purchases machinery from the Universal Defendants. In this sense, the consulting is a kind of promotion for the machinery business.

The Waun Defendants are investors. In 2001, Defendant Timothy Waun attended a seminar on coin-operated laundries given by Defendant Steven Bean, and later met with him about setting up a laundry. The parties entered into a consulting agreement, where the Universal Defendants found a site in a strip mall, assisted in obtaining financing from Comerica Bank, and provided Defendant Timothy Waun with an income analysis for the site. According to their complaint, the Waun Defendants relied on the Universal Defendants' income projections and site analysis when they decided to open a coin-operated laundry facility and purchase approximately $300,000 worth of equipment from the Universal Defendants for use in the establishment. The business, however, failed to produce the revenue that they had allegedly been promised, and ultimately went out of business.

Plaintiff Seneca has insured the Universal Defendants for damages from any claim "made against the insured ... by reason of an act or omission ... in the performance of professional

services by the insured." (Pl. Exh. 3, ¶ I-A). "Professional Services" is defined as "services specified in Item 7 ... performed by an insured for others for a fee." (Id. at p. 5) Item 7 defines the services as "the performance of those services as a consultant in the non-structural design and business marketing of coin-operated laundries." (Id.) The term "business marketing" is not defined. Stringing the definitions together and stripping away redundancies, Plaintiff has insured the Universal Defendants for claims made against them arising from the performance of "non-structural design and business marketing" consulting relating to coin-operated laundries for others for a fee.

The insurance contract excludes the following relevant acts from coverage (Pl. Exh. 3, Rider #1):

- Anything arising out of "any investment advice or financial planning advice or services"

- Anything arising out of "any conflict of interest of the insured in the performance of professional services"

- Anything arising out of "any statements, warrantees or guarantees ... made by the insured"

The Waun Defendants sued the Universal Defendants in August 2004 in Michigan state court, alleging breach of contract, breach of fiduciary duty, negligence, silent fraud, fraudulent misrepresentation, and negligent misrepresentation. Initially, the trial court dismissed the claims at summary disposition, but the Michigan Court of Appeals reversed the trial court and reinstated the claims of negligence, silent fraud, fraudulent/negligent misrepresentation, and breach of contract (on behalf of Defendant Timothy Waun only, and only as to Defendant Universal).

The Waun Defendants have amended their complaint to claim only: (1) negligence, (2) breach of contract, and (3) negligent misrepresentation. The breach and/or tortious act for each of the claims is the Universal Defendants' use of the allegedly inflated income projections from the seminar and from the site analysis.

Plaintiff Seneca filed a motion for summary judgment, arguing that the claims are not insured because (1) they did not arise out of the performance of business marketing services; (2) they did not arise out of services performed for a fee (as required by the policy); (3) they are excluded as the claims are based on investment advice; (4) they are excluded as the claims are based on "statements, warrantees or guaranties"; or (5) they are excluded because the Universal Defendants had a conflict of interest.

The Waun Defendants filed a counter-motion for summary judgment, arguing that (1) the income projections were part of the "business marketing" services; (2) the services were performed for a fee (which is waivable upon certain conditions); (3) the "investment advice" exclusion does not apply; (4) the application of the "statements, warrantees or guaranties" exclusion to this situation would render the policy meaningless; and (5) there has been no claim of a conflict of interest.

### III. STANDARD OF REVIEW

Rule 56(c) authorizes the Court to grant summary judgment "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." There is no genuine issue of material fact if there is

no factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). In other words, the movant must show he would prevail on the issue even if all factual disputes are conceded to the non-movant. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

In a contractual dispute, summary judgment is permissible when the language of the contract is unambiguous, or, if the language is ambiguous, where extrinsic evidence leaves no genuine issue of material fact and permits interpretation of the agreement as a matter of law. See UAW Local 540 v. BVR Liquidating, 190 F.3d 768, 772 (6th Cir. 1999). The Court, in deciding the motion, is to apply the law of the State of Michigan in interpreting the insurance contract. Ray Indus. v. Liberty Mut. Ins. Co., 974 F.2d 754, 758 (6th Cir. 1992).

**IV.     ANALYSIS**

An insurance contract should be read as a whole and meaning given to all terms. Auto-Owners Ins. Co. v. Churchman, 489 N.W.2d 431 (1992). If the terms of an insurance contract are clear and unambiguous, "their plain meaning should be given effect." Murphy v. Seed-Roberts Agency, 261 N.W.2d 198 (1977), and "its construction is a question of law for the court." Taylor v. Blue Cross & Blue Shield, 517 N.W.2d 864 (1994). An insurance contract is clear and unambiguous if it fairly allows only one interpretation. Farm Bureau Mutual Ins. Co. v. Nikkel, 596 N.W.2d 915 (1999).

The Michigan Court of Appeals has held that when a word "appears in a contract of insurance and it is not defined in the policy, it must be construed in a manner most likely to correspond to the intention of the parties to the contract." Bertrand v. Pacific Employers Ins.

Co., 1997 Mich. App. LEXIS 2221, *8 (Mich. App. 1997) (citing American Casualty Co v Wypior, 365 F2d 164, 166-67 (7th Cir. 1966)). "The intention fairly attributable to the insurer and the insured, from an objective standpoint and in the absence of a contrary indication, should therefore reflect the ordinary meaning of the word as it is understood by persons generally." Bertrand, 1997 Mich. App. LEXIS 2221 at *8. Under Michigan law, where it is not possible to determine the parties' intent from the language of their contract, the next best way to determine the parties' intent is to use relevant extrinsic evidence. Klapp v. United Ins. Group Agency, Inc., 663 N.W.2d 447, 457 (Mich. 2003).

### (A) "Business Marketing"

The term "business marketing" is not defined anywhere in Michigan law, and it is not defined in the agreement. Thus, the Court should look to "the ordinary meaning of the word" in determining "the intention fairly attributable to the insurer and the insured." Bertrand, 1997 Mich. App. LEXIS 2221 at *8. Basic principles of contract interpretation also apply, and guide the Court to "look to the explicit language of the [contract] for clear manifestations of intent," view each contract provision "as part of the integrated whole" and construe terms "so as to render none nugatory and avoid illusory promises." UAW Local 134 v. Yard-Man, Inc., 716 F.2d 1476, 1479-80 (6th Cir. 1983).

The ordinary meaning of "business marketing", according the Waun Defendant's expert affidavit, is "promotion, place, pricing, and product." (Def. Exh. 8). Alternatively, the Court can use Plaintiff's definition of "marketing" as "to offer for sale" or "to deal in a market." AMERICAN HERITAGE DICTIONARY 1071 (4th ed.). The effect is the same regardless of which

6

definition is used, as it is apparent that the coverage was meant for the Universal Defendants' consulting services in helping fledgling laundry owners establish themselves. According to the testimony of Defendant Frederic Bean, the Universal Defendants provided consulting services to parties who wished to enter the coin-operated laundry business but did not necessarily have experience in the industry. (Def. Exh. 3, p. 34-37). The benefits of this strategy to the Universal Defendants are obvious: helping people enter the industry creates demand for their products and expands their consumer base.

Plaintiff, however, argues that the term "business marketing" could only apply to pre-existing businesses. (See Pl. Rep. at 10, 12). This is unsupported by law or logic – *future* business marketing is business marketing, too. A business does not need to be in existence for the Universal Defendants to consult with the prospective business owners as to how best to market their prospective business, and thus Plaintiff's proposed reading is nonsensical. Furthermore, it would have been clear to Plaintiff – or any other insurer – that the Universal Defendants were providing this particular kind of consulting to interested and fledgling business owners, and that it was the kind of service that they were seeking to insure.

The Court, looking to "the contract's terms in light of the apparent purpose of the contract as a whole," Grass Lake Golf Club, L.L.C. v. GTR Jackson Properties, L.L.C., 2008 WL 1733779 at *3 (Mich. App. 2008), therefore finds that the term "business marketing" properly applies to the consulting services that the Universal Defendants were providing to the Waun Defendants. Because the claim at hand arises directly out of those consulting services – the consultation and site analysis provided by the Universal Defendants – the Court holds that the policy applies to the consulting services rendered by the Universal Defendants.

7

*(B) "For a Fee"*

The language of the insurance contract requires that the consulting services be performed "for a fee." Plaintiff argues against liability on this ground, claiming that the waiver of the fee upon the purchase of machinery means that the consulting was not performed "for a fee."

The undisputed evidence shows that, under the terms of the consulting agreement, the Waun Defendants would have had to pay a fee of $200/hour to the Universal Defendants if they had not subsequently purchased equipment from them to offset the cost. The unambiguous language of the contract refers only to services performed "for a fee"; it does not refer to a fee that cannot be discounted or reduced, or for a fee that is subsequently collected. Nor is this a situation where a nominal fee is charged and then waived in an attempt to circumvent the contractual language and create liability where none should apply. The Wauns would have been legitimately liable for the consulting fees if they had not subsequently purchased equipment from the Universal Defendants (which they were under no obligation to do).

The Court, looking to avoid "strained constructions" of contractual language, <u>Fitch v. State Farm Fire & Cas. Co.</u>, 536 N.W.2d 273 (Mich. App. 1995), does not have to strain to agree with the Waun Defendants that a fee was charged in the rendering of the services, and thus this provision of the contract does not bar their claim.

*(C) "Investment Advice"*

Next, Plaintiff claims that the policy exclusion of claims arising from "investment advice" serves to bar liability under the policy. Plaintiff claims that while the actions of the Universal Defendants may not meet the popular definition of "investment advice," they were still

8

providing "investment advice" *as to* the Waun Defendants' investment in the coin operated laundry business. Under this reading, the projections and analyses form a kind of suggestion by the Universal Defendants to the Waun Defendants to invest their money in the industry by opening a coin-operated laundry. The Court, however, does not go this far.

Plaintiff's reading of "investment advice" would have the effect of defining nearly every conceivable kind of business consulting as "investment advice". Consulting, at its core, is the provision of advice to businesses for the purpose of maximizing their profits – that is, advice related to investment. It is reasonable for the Court to conclude that if Plaintiff had wished to define "investment advice" so broadly, it would have done so explicitly. The Court looks to the "the ordinary meaning" of "investment advice", Bertrand, 1997 Mich. App. LEXIS 2221 at *8, which is the kind of financial planning offered by brokers, investment advisers, and financial services companies. See also 29 C.F.R. § 2510.3-21(C) (in the ERISA context, investment advice is defined as advice "as to the value of securities or other property" or making recommendations "as to the advisability of investing in, purchasing, or selling securities or other property"). The evidence presented clearly establishes that no advice of that sort was offered. (Def. Exh. 3, p. 45) The Court therefore finds that the investment advice exclusion does not properly apply to bar liability.

### (D) "Statements, Warrantees or Guarantees"

This exclusion applies to "statements, warrantees or guarantees whether expressed, implied or otherwise made by the insured, including by [sic] not limited to any such statements, warrantees or guarantees regarding training, educating, certifying, or testing." (Pl. Exh. 3, Rider

9

1). Plaintiff argues that since the Waun Defendants are relying on "statements" made by the Universal Defendants, this exclusion should bar coverage of the claim.

Reading the provision "as a whole," <u>Churchman</u>, 489 N.W.2d at 431, and seeking "clear manifestations of intent," <u>Yard-Man, Inc.</u>, 716 F.2d at 1479, the Court finds that this provision does not apply. It is clear from the context that the term "statements" is meant to be read with "warrantees or guarantees", and apply to representations about their services. The intention to exclude coverage for *all* statements made by the insured with regard to *anything* is clearly not "the intention fairly attributable to the insurer and the insured," <u>Bertrand</u>, 1997 Mich. App. LEXIS 2221 at *8, as this would simply fail to provide coverage for any kind of consulting services, rendering the policy meaningless. The Court finds that coverage is not excluded based on this provision.

### (E) "Conflict of Interest"

The common meaning of "conflict of interest" applies to render this exclusion moot. Plaintiff argues that the Universal Defendants' position as a seller in the industry where they are also performing consulting services creates a conflict of interest. However, the Waun Defendants are correct to point out that this renders the entire policy meaningless, as every single instance of consulting "in the non-structural design and business marketing of coin operated laundries" would be an immediate conflict of interest, and the policy would cover nothing at all. The only acceptable form of consulting, according to Plaintiff, would be consulting with a party not interested in the purchase of machinery; however, this would still

10

involve a potential conflict under Plaintiff's framing, as the other party (being involved in the coin-operated laundry business) is always a potential purchaser of machinery.

There is simply no set of circumstances under which Plaintiff's interpretation would allow coverage, and it is absurd to think that the Universal Defendants would have purchased insurance that insured nothing at all. This Court, mindful to avoid "strained constructions," Fitch v. State Farm Fire & Cas. Co., 536 N.W.2d at 275, therefore finds that this provision does not bar this claim.

### V. CONCLUSION

The basic principles of contract interpretation compel the Court to construe terms "so as to render none nugatory and avoid illusory promises." Yard-Man, Inc., 716 F.2d at 1479-80. Accepting Plaintiff's arguments would have exactly the opposite effect, and would result in an insurance contract that insured nothing at all.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Summary Judgment is **DENIED** and the Waun Defendants' Motion for Summary Judgment is **GRANTED.**

**IT IS SO ORDERED.**

                                                s/Marianne O. Battani
                                                MARIANNE O. BATTANI
                                                UNITED STATES DISTRICT JUDGE

DATED: August 26, 2008

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon counsel of record on this date by ordinary mail and/or electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK